**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **CHURCH OF THE WORD**, d/b/a **WORD NETWORK CHURCH**, a Michigan non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>**GEORGE BLOOMER**, an individual,<br><br>Defendant. | Case No. 22-cv- _______<br><br>Hon. _________________<br><br>Magistrate Judge ___________<br><br>**VERIFIED COMPLAINT** |
| **BODMAN PLC**<br>*Attorneys for Plaintiff*<br>John T. Below (P48677)<br>Rebecca Seguin-Skrabucha (P82077)<br>Amanda McSween Empey (P84594)<br>Bodman PLC<br>201 W. Big Beaver Road, Suite 500<br>Troy, MI 48084<br>(248) 743-6000<br>jbelow@bodmanlaw.com<br>rseguin-skrabucha@bodmanlaw.com<br>aempey@bodmanlaw.com | |

## VERIFIED COMPLAINT AND JURY DEMAND

Plaintiff, Church of the Word, d/b/a Word Network Church ("WNC"), a Michigan non-profit corporation, by and through its attorneys, Bodman PLC, respectfully sets forth its Verified Complaint and Jury Demand against Defendant, George Bloomer ("Bloomer"), as follows:

## PARTIES

1. WNC is a non-profit corporation organized and existing under Michigan law, with its principal place of business in Oakland County, Michigan.

2. WNC is a Christian production company, which produces and features religious programming, hosted predominantly by African American religious leaders.

3. Bloomer is an individual person who is a citizen of North Carolina.

4. WNC permitted Bloomer to utilize its production platform located in Oakland County, Michigan, to broadcast Christian sermons and sell his books.

5. Between approximately 2011 and 2019, Bloomer did, in fact, utilize WNC's platform.

6. Bloomer is a plaintiff in a related lawsuit that he brought against The Word Network Operating Company, Inc. (owner of WNC), and Kevin Adell, Case No. 2:22-cv-12433, currently pending in the United States District Court for the

Eastern District of Michigan – Southern Division, before Honorable Nancy G. Edmunds.

**JURISDICTION AND VENUE**

7. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(1) because WNC is a citizen of Michigan, Bloomer is a citizen of North Carolina, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. This Court has personal jurisdiction over the parties.

9. Venue is proper in this Court under 29 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this lawsuit occurred in Oakland County, Michigan.

**GENERAL ALLEGATIONS**

10. In September, 2011, WNC, through its Chief Executive Officer Kevin Adell ("Adell"), approached Bloomer to inquire if he would like to use production and airtime at WNC for his sermons and to promote the sale of his Christian books.

11. Bloomer met with Adell, discussed his experience, and, shortly thereafter, Bloomer began using periodic airtime at WNC.

12. During Bloomer's airtime, he preached, advertised his books, and solicited donations. Viewers had the option to purchase Bloomer's books through WNC. Upon receipt of a purchase request, WNC ordered a corresponding number

of Bloomer's books, and then WNC packaged and shipped the books directly to viewers in WNC packaging.

13. As a Christian pastor or "Bishop" with WNC, Bloomer possessed a special, legal, and fiduciary duty to provide full disclosure about his background to WNC, especially any wrongdoing of the nature that would significantly compromise or defame WNC as a Christian platform with many years of positive reputation and success.

14. Furthermore, because Bloomer promoted the sale of his books on WNC's platform, and because WNC facilitated the packaging and delivery of Bloomer's books, Bloomer had a special, legal, and fiduciary duty to disclose material facts about his character and reputation given that Bloomer's character and reputation were topics of the books themselves.

15. Michigan law recognizes the existence of a special, legal, and/or fiduciary duty under the facts and unique circumstances alleged in this Verified Complaint.

16. In or about September, 2012, approximately one (1) year after he started, Bloomer, recognizing his special, legal, and fiduciary duty, approached WNC and stated that he "had to come clean" with WNC "about his past," stating that he, Bloomer, had served time in prison, and that he was a former drug dealer.

WNC asked Bloomer if that was all he had to disclose about his past, to which Bloomer clearly responded – that was all.

17. Upon information and belief, Bloomer did serve time in prison for drug-related offenses.

18. WNC concluded that Bloomer had paid his dues with regard to the drug-related offenses and made the determination that such offenses did not jeopardize WNC's positive reputation and success.

19. Bloomer neither disclosed nor discussed any other criminal history or illegal conduct or allegations thereof.

20. Bloomer used the WNC platform from 2011 to May 8, 2019, Bloomer's last airdate. In all the time Bloomer used WNC airtime or promoted the sale of his books, he never disclosed anything negative about his past except the drug offence referenced above.

21. In or about September 2021, WNC first learned of one or more instances of sexual assault of a minor committed by Bloomer against then thirteen (13) year old James Battles and another male minor ("Sexual Assault Events"), *both of whom were members of a church at which Bloomer was preaching*. The Sexual Assault Events had transpired approximately 25-30 years ago.

22. James Battles's explanations of the Sexual Assault Events emerged on social media and involved multiple videos and audio recordings, including audio of Bloomer admitting to assaulting Battles when Battles was a minor.

23. Bloomer had a special, legal, and fiduciary duty to fully "come clean" with WNC and disclose the Sexual Assault Events.

24. At no time in 2011, 2012, or during the "come clean" discussion, nor at any time while Bloomer used WNC airtime for 9 years, did Bloomer inform WNC of the Sexual Assault Events.

25. WNC relied on the "come clean" discussion and Bloomer's special position as a Christian pastor,[1] or "Bishop," in allowing Bloomer continued airtime, production staff, access to a live studio audience that, at times, included children, and Christian book-selling privileges.

26. Bloomer never informed WNC of the Sexual Assault Events – a direct breach of Bloomer's duty to disclose same.

27. WNC would never have allowed Bloomer on air, access to a live studio audience (including children), or book-selling privileges, if WNC had any knowledge of the Sexual Assault Events.

---

[1] Clergy are "mandatory reporters" of child abuse in Michigan under Michigan's Child Protection Law, M.C.L. § 722.623.

28. Through social media, James Battles provides detailed explanations of the Sexual Assault Events, including specific allegations of criminal sexual conduct against a minor, the nature of which would preclude Bloomer from ever being aired on WNC or promoting the sale of Christian books.

29. WNC's reliance on Bloomer (partially) "com[ing] clean," Bloomer's breach of duty to disclose, and the emergence of the Sexual Assault Events videos and audio has significantly damaged WNC.

30. Despite the fraud committed by Bloomer against WNC, Bloomer has, *inter alia*, demanded as much as $150,000-$160,000 for alleged unpaid book sales[2] and filed a lawsuit on book sales and denied airtime; however, again, without Bloomer's fraud, the book sale or airtime arrangements with WNC would have never existed.

31. As a result of Bloomer's fraud committed against WNC, WNC should be granted relief, including, but not limited to, full rescission of any and all business arrangements between WNC and Bloomer, including book sales, airtime or any other claim, as well as all other available damages, in law or equity, including damages for reputational damage, plus allowable attorney fees, costs and expenses.

[2] Invoice records at WNC confirm that no amount of money is owed for books. Notwithstanding the lack of supporting accounting or invoice information, Bloomer has alleged WNC owes him or his company hundreds of thousands of dollars.

**COUNT I:**
**COMMON-LAW MISREPRESENTION/FRAUD**

32. WNC repeats and incorporates all of the allegations above as though fully set forth here again verbatim.

33. In or about September, 2012, when Bloomer "came clean" to WNC "about his past," Bloomer made a material representation that the only illegal conduct he had committed or been accused of was related to the drug offenses for which he was imprisoned.

34. This material representation was false.

35. When Bloomer made the material representation, he knew it was false.

36. Bloomer made the material representation so as to continue his business relationship with WNC.

37. WNC relied on the material representation and permitted Bloomer to use WNC production services for several years.

38. WNC suffered injury due to its reliance on Bloomer's (limited) material representation, including injury to its reputation.

WHEREFORE, WNC respectfully requests that the Court enter a judgment in its favor and against Bloomer and award WNC all relief as may be appropriate, including, but not limited to, full rescission of any and all business arrangements between WNC and Bloomer, including book sales, airtime or any other claim, as

well as all other available damages, in law or equity, including damages for reputational damage, plus allowable attorney fees, costs and expenses.

**COUNT II:**
**SILENT FRAUD**

39. WNC repeats and incorporates all of the allegations above as though fully set forth here again verbatim.

40. Bloomer, as a Christian pastor airing on WNC, had a special, legal, and fiduciary duty to disclose the Sexual Assault Events to WNC.

41. Bloomer, as an individual who utilized WNC's platform to sell books about his Christian character and reputation, had a special, legal, and fiduciary duty to disclose the Sexual Assault Events to WNC.

42. Bloomer specifically omitted from his truthful "come clean" admission to WNC the material fact that he had been accused of and/or committed the Sexual Assault Events.

43. Bloomer specifically omitted the material fact that he had been accused of and/or committed the Sexual Assault Events with the intent to mislead WNC and continue to receive airtime and sell his books.

44. WNC was, in fact, misled and permitted Bloomer to receive production services and airtime for several years after his limited "come clean" admission.

45. WNC suffered injury due to its reliance on Bloomer's false representation and omission of a material facts, including injury to its reputation.

WHEREFORE, WNC respectfully requests that the Court enter a judgment in its favor and against Bloomer and award WNC all relief as may be appropriate, including, but not limited to, full rescission of any and all business arrangements between WNC and Bloomer, including book sales, airtime or any other claim, as well as all other available damages, in law or equity, including damages for reputational damage, plus allowable attorney fees, costs and expenses.

Dated: November 7, 2022

Respectfully submitted,

/s/ John T. Below (P48677)
**BODMAN PLC**
*Attorneys for Plaintiff*
John T. Below (P48677)
Rebecca Seguin-Skrabucha (P82077)
Amanda McSween Empey (P84594)
Bodman PLC
201 W. Big Beaver Road, Suite 500
Troy, MI 48084
(248) 743-6000
jbelow@bodmanlaw.com
rseguin-skrabucha@bodmanlaw.com
aempey@bodmanlaw.com

## JURY DEMAND

Plaintiff, Church of the Word, d/b/a Word Network Church, a Michigan non-profit corporation, by its attorneys, Bodman PLC, hereby demands trial by jury of the foregoing complaint, including all claims, defenses, counter-claims, cross-claims, and third-party claims as they may be asserted.

Dated: November 7, 2022

Respectfully submitted,

/s/ John T. Below (P48677)
**BODMAN PLC**
*Attorneys for Plaintiff*
John T. Below (P48677)
Rebecca Seguin-Skrabucha (P82077)
Amanda McSween Empey (P84594)
Bodman PLC
201 W. Big Beaver Road, Suite 500
Troy, MI 48084
(248) 743-6000
jbelow@bodmanlaw.com
rseguin-skrabucha@bodmanlaw.com
aempey@bodmanlaw.com

**VERIFICATION**

I declare under penalty of perjury that the factual statements set forth in the foregoing complaint are true and correct to the best of my knowledge, information, and belief.

Church of the Word, d/b/a Word Network Church,
a Michigan non-profit corporation

Kevin Adell,
Chief Executive Officer of The Word Network Operating Company, Inc., sole owner of Church of the Word, d/b/a Word Network Church, a Michigan non-profit corporation.